23252

James SCOTT, by his Guardian ad Litem, Frank A. McCLURE, Jr., Respondent v. FRUEHAUF CORPORATION and Piedmont and Southern Leasing Company, Defendants, of whom Piedmont and Southern Leasing Company is Respondent-Appellant, and of whom Fruehauf Corporation is Appellant-Respondent.

(396 S.E. (2d) 354)

Supreme Court

*Charles E. Carpenter, Jr.* and *R. Davis Howser* of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellant-respondent Fruehauf Corp.*

*James D. Nance,* of *Horger, Horger, Nance and Lanier,* Orangeburg, *for respondent-appellant Piedmont and Southern Leasing Co.*

*John E. Parker* and *Daniel Henderson* of *Peters, Murdaugh, Parker, Eltzroth & Detrick,* Hampton, *for respondent James Scott.*

Heard Nov. 2, 1988.

Decided Aug 6, 1990.

GREGORY, Chief Justice:

This is a products liability case. The jury awarded respondent Scott $1,125,000 actual damages against appellant-respondent (Fruehauf) and respondent-appellant (Piedmont), and an additional $1,125,000 in punitive damages against Fruehauf alone. The jury found for Piedmont on its crossclaim against Fruehauf for indemnification. We affirm the damages award to Scott and reverse the judgment against Fruehauf on Piedmont's crossclaim.

Scott was injured when he attempted to place a mounted wheel assembly on the axle of a trailer. The wheel rim and side ring explosively separated, striking respondent in the head and destroying nearly all of both frontal lobes of his brain. He is severely disabled and requires twenty-four hour care.

The defective wheel assembly consisted of a multipiece rim and a side ring both manufactured by Firestone Tire and Rubber Company and sold to a trailer manufacturer. The rim and ring were not designed to be used together. The trailer manufacturer sold Fruehauf the trailer in question in a used condition. Fruehauf repaired and reconditioned the trailer, including the tires, but did not break down the wheel assemblies for inspection. Evidence indicates Fruehauf knew at the time that such wheel assemblies are dangerous if assembled from mismatched parts. Fruehauf sold the trailer to Piedmont who then leased it to Scott's employer, a cement company. The incident in which Scott was injured occurred two years later.

Scott settled his claim against Firestone for $675,000 with a guarantee of an additional $200,000 if he did not recover against other parties. He commenced this action and won the verdict indicated above based on strict liability and negligence against Fruehauf and strict liability only against Piedmont.

## LIABILITY

Fruehauf and Piedmont raise several issues jointly and will be referred to jointly as appellants. First, appellants contend the trial judge erred in failing to rule that Scott's release of the manufacturer, Firestone, operates as a matter of law to exonerate them from liability. The release of one tortfeasor does not constitute a release of others who contributed to the plaintiff's injuries unless the parties intended such a release or the plaintiff received full satisfaction. *Bartholomew v. McCartha,* 255 S.C. 489, 179 S.E. (2d) 912 (1971). The release here evidences no intent to release others from liability and in fact contemplates further litigation against other tortfeasors to fully compensate Scott. We find no merit in appellants' contention.

Appellants argue in the alternative the release should have been admitted into evidence to show Scott's "obligation" to pursue this litigation before recovering an additional $200,000 from Firestone. Scott's motive in bringing this lawsuit does not tend to establish any matter in issue and is therefore irrelevant. *Francis v. Mandlin,* 215 S.C. 374, 55 S.E. (2d) 337 (1949). Moreover, appellant's reliance on *Poston v. Barnes,* 294 S.C. 261, 363 S.E. (2d) 888 (1987), is misplaced. In that case, we held a release admissible to expose a sham defendant whereas here Firestone is not a party nor does Firestone's release affect appellants' liability to Scott.

Next, appellants contend strict liability does not apply in this case because the wheel assembly was placed into the stream of commerce prior to July 9, 1974, the effective date of the strict liability statute, S.C.Code Ann. § 15-73-10 (1976). Appellants cite the manufacture dates of the mismatched ring and rim in 1968 and 1972 respectively as the pertinent dates triggering application of the statute. We disagree.

Section 15-73-10 by its terms determines the liability of the *seller* of a defective product. The pertinent date to determine its application is the date the product was sold by the seller. *See Schall v. Sturm, Ruger Co.,* 278 S.C. 646, 300 S.E. (2d) 735 (1983) (statute inapplicable where sale occurred prior to effective date and injury occurred after); *Hatfield v. Atlas Enterprises, Inc.,* 274 S.C. 247, 262 S.E. (2d) 900 (1980) (statute inapplicable where sale and injury occurred prior to

effective date). Since Fruehauf sold the trailer with the defective wheel assembly to Piedmont sometime after 1976, and Piedmont leased it to Scott's employer in 1979, the strict liability statute applies to both appellants.

Next, Fruehauf argues the trial judge erred in denying its motions for directed verdict or j.n.o.v. on the issue of negligence. First, Fruehauf contends Scott failed to establish it owed him a duty of care because it did not design or manufacture the defective wheel assembly and was merely a seller. Fruehauf's cites *Thrash v. U-Drive-It Co.*, 158 Ohio St. 465, 110 N.E. (2d) 419 (1953). In that case, the defendant sold a defective used truck to a car dealer who sold it to the injured party. The Ohio Supreme Court held the defendant had no duty of care to the injured party because the parties lacked privity. In South Carolina, however, the supplier of a defective product is accountable to an injured party on ordinary negligence principles despite a lack of privity. *Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 191 S.E. (2d) 774 (1972).

Fruehauf also contends Scott failed to establish it breached its duty of care. Scott alleged Fruehauf failed to properly inspect the wheel assembly when, as a dealer in used trailers, it knew or should have known the danger of mismatched parts. The evidence showed Fruehauf at one time marketed its own multipiece rims and was aware of the danger of a mismatched rim and ring as early as 1963. Before selling its used trailers, Fruehauf did not break down the wheel assemblies for inspection although it would have taken only forty minutes per trailer to do so. Fruehauf's own safety expert testified the company should have inspected the wheel assemblies since Fruehauf knew the danger of mismatched parts. Viewing this evidence in the light most favorable to Scott, the issue of a breach of duty was properly submitted to the jury and the motions for directed verdict and j.n.o.v. were properly denied. *See Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984).

Fruehauf further contends the trial judge should have found Scott contributorily negligent or assumed the risk as a matter of law based on evidence Scott's employer warned him to put the tires in a cage before inflating them to avoid the danger of exploding rims. The issues of con-

tributory negligence and assumption of the risk were questions of fact for the jury. *Turner v. Sinclair Refining Co.*, 254 S.C. 36, 173 S.E. (2d) 356 (1970); *Rogers v. Atlantic Coast Line R. Co.*, 222 S.C. 66, 71 S.E. (2d) 585 (1952). The motions for directed verdict and j.n.o.v. were therefore properly denied. *Graham v. Whitaker, supra.*

Finally, appellants contest several evidentiary rulings by the trial judge. The admission or exclusion of evidence is within the trial judge's discretion. *Manning v. City of Columbia*, 297 S.C. 451, 377 S.E. (2d) 335 (1989). We find no abuse of discretion in the trial judge's rulings.

## DAMAGES

Fruehauf contends punitive damages should not be recoverable in a strict liability case because liability is not based on the defendant's conduct.

This Court recently decided this issue in *Barnwell v. Barber-Colman Co.*, — S.C. —, 393 S.E. (2d) 162 (1989), disallowing punitive damages in an action based solely on strict liability. In this case, however, the jury specifically found Fruehauf liable on both strict liability *and* negligence causes of action. Punitive damages are recoverable in a negligence cause of action when the defendant's conduct rises to the level of a willful, wanton, or malicious violation of the plaintiff's rights. *Harris v. Burnside*, 261 S.C. 190, 199 S.E. (2d) 65 (1973). A conscious failure to exercise due care constitutes willfulness. *Tinsley v. Western Union Telegraph Co.*, 72 S.C. 350, 51 S.E. 913 (1905). On the basis of the evidence presented, the jury could have found Fruehauf's negligence rose to the level of willfulness in failing to inspect the wheel assembly when it was aware of the danger of mismatched parts. We hold the award of punitive damages proper based upon the jury's finding of Fruehauf's liability in negligence.

Fruehauf further contends the trial judge erred in submitting Piedmont's crossclaim for indemnification to the jury because there is no right of indemnity between joint tortfeasors. We agree.

Under South Carolina law, there can be no indemnity among mere joint tortfeasors. *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E. (2d) 552 (1983); *Atlantic Coast Line R.R. v. Whetstone*, 243 S.C. 61,

132 S.E. (2d) 172 (1963). Parties that have no legal relation to one another and who owe the same duty of care to the injured party share a common liability and are joint tortfeasors without a right of indemnity between them. *Atlantic Coast Line R.R. v. Whetstone*, 243 S.C. at 68-69, 132 S.E. (2d) at 175. Here, Fruehauf and Piedmont shared a common liability to the ultimate consumer, Scott, under our strict liability law. *See* S.C.Code Ann. § 15-73-10(2)(b) (1976). Fruehauf and Piedmont each contributed to the consumer's injury by selling a defective product.[1] We hold common law indemnification does not apply among joint tortfeasors in strict liability. *See Promaulayko v. Amtorg Trading Corp.*, 224 N.J. Super. 391, 540 A. (2d) 893 (1988).[2] This same principle requires reversal of the trial judge's ruling allowing indemnification for costs and attorney fees. *Addy v. Bolton*, 257 S.C. 28, 183 S.E. (2d) 708 (1971); *JKT Co. v. Hardwick*, 284 S.C. 10, 325 S.E. (2d) 329 (Ct. App. 1984).

Further, since both Fruehauf and Piedmont are jointly liable for actual damages, each is entitled to benefit from the set-off for the $675,000 Firestone settlement. *Powers v. Temple*, 250 S.C. 149, 156 S.E. (2d) 759 (1967). We therefore reverse the trial judge's ruling that the set-off be allowed only to reduce the punitive damages award and hold the $675,000 reduction shall apply to the $1,125,000 award for actual damages.

Appellants' remaining exceptions are disposed of pursuant to Supreme Court Rule 23.

Accordingly, the judgment of the circuit court is

Affirmed in part; reversed in part..

HARWELL, CHANDLER and FINNEY, JJ., concur.

TOAL, J., disqualified.

---

[1] The trial judge ruled Piedmont's lease to Scott's employer was a "sale" as a matter of law for purposes of applying the strict liability statute. This ruling is not before us on appeal. *See Henderson v. Gould*, 288 S.C. 261, 341 S.E. (2d) 806 (Ct.App. 1986).

[2] Our decision in *Stuck, supra,* is inapplicable here. In that case, the party seeking indemnification was the consumer who had a cause of action against the purported indemnitor in strict liability.